to the first case on our calendar, which is Connecticut Fine Wine versus the Commissioner and Brescom Barton. Oh, they're on submission. Thanks. Okay, we'll hear from Connecticut Fine Wines. Thank you, Your Honor. Good morning. I'm William Murphy, counsel for Connecticut Fine Wine & Spirits, which does business as Total Wine. I'll probably refer to my client as Total Wine. The district court in this matter dismissed on a preliminary motion a federal antitrust challenge to a state pricing regime. Can I say something just for... Yes, Judge Sackett. Just for myself, I am most interested in helping you spend a decent, personal, decent amount of time on Bada Balia and what to do about it, if anything, because to me that's sort of at the center of the hardest part of the case. Again, I haven't discussed this with my colleagues. It's just a personal request. Well, given the amount of time I have, I'll turn to Bada Balia then, Your Honor. We think, first of all, that the statutes need to be looked at because they are interrelated. They should be looked at together and that the district court erred in sort of separating them out. But when the district court separated the statutes out and looked at them separately, with respect to the horizontal posting and holding of case prices, the court found that Bada Balia was controlling. We think that that's wrong for at least three reasons. The first reason is Bada Balia is distinguishable from this case. This is a case that doesn't involve just wholesale prices to the retailers. It also involves mandatory minimum prices set by the wholesalers that the retailers must charge. And that means it brings it within much more closely to the decisions of the Supreme Court in Midcow and 324 Liquor. Those are vertical arrangements. They are vertical arrangements, but they also had horizontal aspects. And in Midcow, the court expressly recognized the horizontal aspects and they talked about it. Justice Powell talked about it again in 324 Liquor. But if you think about it, this is a system where it's horizontal in that all of the wholesalers are posting both the case price and the bottle price. All of them are posting that for every product so that every retailer must follow that minimum bottle price for every product offered for sale in the state. That clearly has horizontal impacts on both the wholesale level and the retail level and ultimately to the consumer. Is it your argument that there's a horizontal agreement other than at the wholesale level? Our argument, Your Honor, is that there's not really a need for an agreement. The state has authorized and mandated that these prices be set and as such there's no need for there to be an agreement as the Supreme Court held in 324 Liquor, footnote eight. I was indistinct. Are you saying that the problem here is horizontality solely at the wholesaler level or at a lower level? At both levels. Both at the wholesale level and at the retail level. There's a horizontal impact in that every retail store in Connecticut must sell every product that it offers for sale at a minimum price, at least at that price, which is not set by them and it's not based on their cost necessarily. It's set by the wholesaler. It's based on an arbitrary deviation sometimes between the case price and the bottle price. Now, getting back to Bada Paglia and Judge Sachs' question, we think that that aspect of the statute distinguishes Bada Paglia and Judge Friendly in his decision noted that in Bada Paglia, the New York Court of Appeals . . . I understand this argument is based on the notion that we should be taking all the statutes together and not just the post and hold. Yes. In part, but . . . No, no. What you're saying now is about that. That's right. And what Judge Friendly said in Bada Paglia was in New York at that time the New York Court of Appeals had ruled that the very same aspect of the statute that we're complaining about here at the bottle price level, the retail level, had already been invalidated by the New York Court of Appeals in a case called Mazzetti, which he cites. And so he said, I'm not confronted in this case with a situation in which the retailers are bound to follow the price schedules set by the wholesalers. And so that's why our case is distinguishable. That was his way of distinguishing the retail price maintenance, retail price maintenance aspect of the case. It was his way of, I would say, not having to deal expressly with mid-count, which at that time had held that this kind of resale price maintenance was per se invalid and preempted. Now, the other thing that I want to say about Bada Paglia and the reasoning of Judge Friendly is that although he says several times in the opinion that I'm not deciding necessarily that there has to be an agreement in order for there to be an unlawful price restraint by statute. When you read his preemption analysis, what he ends up saying is that the wholesalers in New York didn't have to conspire, nor did they have to engage in conscious parallel pricing. Therefore, this scheme is subject to rule of reason analysis and under Rice, it's not preempted. I think that the problem there is that he really in his preemption analysis is saying there's no agreement here. And our position is that when you have a statute that commands adherence to price schedules that are set by the wholesalers, there is no need for an agreement. The search for an agreement is illusory, it's fanciful. Why do you need an agreement? The hybrid restraint cases all deal with anti-competitive behavior initiated by private parties in the marketplace who are setting prices and manipulating prices, and the state has an overlay of enforcing those private marketing decisions. There's no need for an agreement. This here tells us, though, that the test is whether the private actors are granted a degree of private regulatory power. Why isn't one way to look at this to say each individual wholesaler still is making its own independent price choices within a framework that's been narrowed by regulation. But none of them has private regulatory power. They're each making conscious parallel decisions perhaps, but they're each ultimately acting separately. Well, that gets back, I think, to the whole aspect of this. Because the wholesalers not only are setting prices, but they are required by the state to hold those prices for 30 days. And that's the other aspect of Bata Paglia, which I think subsequent decisions and the leading antitrust commenters have all concluded, unanimously I would say, that that aspect of Bata Paglia was wrong. That this really is a horizontal price restraint, and that it really is per se violative of the Sherman Act. The hold, not the post. The hold, that's correct. And then Judge Winter makes that point in his dissenting opinion, and I think that Judge Winter's dissenting opinion is absolutely correct. So what I would say about Bata Paglia is three things. One, it's distinguishable because we have both aspects of the across the board wholesale case price fix, as well as the minimum bottle price imposed upon the retailers. That distinguishes it. Number two, the reasoning is flawed after 324 liquor, which basically says, you don't need to look for the agreement that Judge Friendly was looking for at all. Because this is a system where the private decisions are being enforced by state law. The state law is providing all the glue that's needed to hold the conspiracy together. And then the third point is that even taking it at its own level, and even looking just at the horizontal aspect of it, just the price fix on case prices. There is a problem here that courts like TFWS, Costco, Miller versus Headland, the Canterbury case in the District of Massachusetts, all of them recognized that this is really a horizontal price fix. So I do think that in the time that I have remaining- It allows the individual wholesalers to match each other's prices. It invites that possibility by allowing the one time downward movement. Yes. But equally in theory, the wholesalers could stick at their independent separate pricing decisions. They just have to stay put for a month. Well, what we know is that they don't. And that's what our chart that was attached to the complaint shows, where wholesalers sell the same product to retailers. And many of the major liquor brands, your Maker's Mark, your Tanqueray Gin, have multiple wholesalers. They all routinely, every month, when they make a change, they make the same change at the same level on a case price dropping sometimes $10 a bottle. But they don't drop the minimum bottle price. They keep that profit margin there for the retailers, which- Is it your position, though, that even if there was a variation, rather than sameness, that the hold period would make it per se unlawful? Yes. In any event. It would, in any event. This is, I mean, this is so much worse than what the situation in Maryland and TFWS. The Maryland statute just was a post and hold statute just for the wholesale price to the retailer. It did not have this aspect, which Connecticut has, which is unique in the whole United States. This is the only state which has this minimum bottle pricing regime, which really allows wholesalers to dictate the profit margins of the retailer, and dictate to the consumer a minimum amount that you're going to pay. And for a popular product, you know, my wife drinks Kendall Jackson Chardonnay. In Connecticut, every liquor store in the state is going to sell Kendall Jackson Chardonnay at the exact same price. It's the minimum price set by the wholesaler that month. Usually it's $10.99. And that's what you'll pay in every store in Connecticut. There's absolutely no competition whatsoever within that brand. And also across brands, because there's no inter-brand competition here either. Which is why we say that the decision of the Supreme Court in Ligon, which said that vertical price maintenance in the private enterprise system are subject to the rule of reason. And therefore, you couldn't have a preemption claim. Well, that doesn't apply to a statutory claim. There's nothing about the analysis of Justice Kennedy in Ligon that makes any sense if you think about this statute. Because Ligon all turns on the fact that resale price maintenance can have pro-competitive effects. It can be pro-competitive enhanced inter-brand competition, where Tanqueray is competing against Beef Eaters. But in this system, there is no intra-brand or inter-brand competition because the wholesalers are all setting fixed prices that the retailers have to maintain. I gather you're saying, with respect to your wife's Kendall Jackson. Yes. That the retail price winds up being the same statewide as- Yes, yes. It's none of my business. I think you should buy her some higher priced wine. You know, I tried, Judge, but she likes Kendall Jackson. So, I mean, it's oaky, but not too oaky. But the real thing is that the Kendall Jackson would be sold by my client, perhaps for $8.99 a bottle, because that's what he's buying it for from the wholesaler. He could, if he could. He buys it at that price. He can't sell it at that price. He's forced to sell it at the artificial minimum bottle price, dictated by the wholesalers that has nothing to do with cost, and has everything to do with maintaining profit margins in the retail sector. May I ask a remedy question? Suppose that you are right, that there is a horizontal price fixing problem here. While I understand that the argument is that analytically we should consider all the component parts together, what's the remedy? Is it just invalidating post and hold? Does that get you the relief you need? Well, I don't think so. And I think when you think about this, and whether the statutes have to be construed together, you think about what the remedy is. If you eliminated post and hold, but kept the requirement that minimum bottle prices are set, how does that work? Well, how does anybody know what the minimum bottle price is, unless it's posted and held? So that doesn't make a lot of sense to me. If you say, well, you can have, we can eliminate minimum bottle pricing, but just keep the post and hold statute. Well, that still has all of the evils that were recognized by the Fourth Circuit in TFWS. It's still a horizontal price fix. What about just the hold part? If the hold part went, would you still have a horizontal price fixing problem? That's, I think, a more difficult question. If it was just a price posting requirement, if the court, upon review, was also to eliminate the minimum bottle aspect of it, I think then you might have a statute that, we would have a hard time saying that that statute is so anti-competitive that it doesn't override the state's 21st Amendment interest in regulating the liquor industry in a valid way. But that's an issue that should be decided after discovery on remand if we prevail in this argument that these statutes ought to be presumptively preempted under the Sherman Act. And then let the state show either that it's actively supervising the system, which it's not, because it's not regulating prices, or that the 21st Amendment interest that they say that they have is so important that it outweighs the federal interest in a fair pricing system. In other words, if you prevail here on this appeal, the case goes forward without any relief in your favor at this time. That's right. I mean, it would be vacated and remanded for proceedings, which I think would be proceedings on probably the 21st Amendment defense. And the state action supervision requirement, if the state chooses to try to say that that's what they do. Counsel, your time has long expired. You're reserved two minutes for rebuttal.  Thank you, Your Honor. Good morning, Your Honor. Gary Becker, Assistant Attorney General for the State of Connecticut for the Commissioner. Your Honor, if I could turn to Judge Engelmeyer's question first. The, I need to switch my glasses, I should have gone with bifocals. These statutes are separate statutes. And in fact, you could have a minimum resale price statute without a post and hold. The wholesaler chooses the case price. As we know, they choose their own case prices for their own product. And they could inform the retailer what that case price is. It's a mechanical process to figure out what the minimum bottle price is from the regular case price. Divide by the number of bottles and add either two, four, or eight cents, depending on the size of the bottles. The, I'm sorry, Your Honor. The, with respect to- Are you suggesting we sever post and hold and uphold the statute otherwise? Your Honor, the state of Connecticut has a provision of general application that laws should be severed if at all possible to save the parts that are constitutional if there's a challenge. And I think that that is our position. I would argue that all three statutes that are challenged are in fact constitutional and should be upheld by this court. We would prefer only one of them to be treated as preempted rather than all three of them. That is correct, Your Honor. That is correct. Judge Ungermeyer, you also raised, you also asked about, what about the hold part? Well, if you look at the post and hold, there's a posting provision where they all have to post all their prices. And that, to a degree, it allows them to set that price. That's not dictated by the state what price they post. The part that is really dictated by the state, and I would argue is a unilateral restraint, is the hold part. The state says, once you post it, you must hold it. It's no different than if a mattress manufacturer says we're having a sale on queen mattresses for the next two weeks, puts the advertisement in the paper. If they don't sell the mattress for that price for the next two weeks, then our consumer protection division will go after them. None of the reports to have addressed a post and hold provision, at least post Fisher, have held it to be unilateral though. I think you're correct, Your Honor. TFWS and Costco did not do that. But let's not conflate the unilateral test with the per se test. The mere fact that you might think- But are you disputing, what is the argument as to why this is unilateral as opposed to as the other courts have held a hybrid? Well, the hybrid cases, and you can look all the way back to Schwegman and MidCal. In those cases, there was actually an agreement between either the producer and the wholesaler and MidCal as to what the price to retailers would be, or a wholesaler and a retailer in Schwegman. They agreed, and then they imposed that on other players in the market. Here, when a wholesaler posts its price, the only entity that's bound is that wholesaler. If the other manufacturers don't match it, they sell at their own price. There is, I'd say, less regulatory power, private regulatory power, in our system than in the systems considered in MidCal or Schwegman. Doesn't the overall system effectively obviate the need to get together for an agreement if, in effect, everyone posts their prices, is bound to them, but can match the others on a one-way basis within several days? And in practice, there's no need to get together and communicate. If the communication has been put up there in skywriting, in effect, pursuant to state statute. The question is, your honor, you know what they posted last. Every month, if you're a wholesale, you must make a decision. What do I post this month? Maybe I will post a higher price because I think I understand the market and I want a better margin this month. Nobody can match me at a higher price. And you know what your competitors posted last month, but you don't know what they will post this month. If, in addition, they had an agreement among themselves that they would post the same price every month, that would be a different case. But the statute doesn't require it. I think it's suggesting or stating that because of the particulars of this business, post and hold means a particular price right across the board. It may not say it has to be the same price, but given the dynamics of the business, it does mean they're all the same price, is that not so? Your honor, I understand that's what Total Wine said, but I don't think it's. On a facial challenge, you look at what the statute says and what it allows, what it commands. And the statute does not say you shall all post the same prices, or one of you post the price and controls the rest. The statute allows some matching, not up, only matching down. And the thing to keep in mind, your honor, is there are some wholesalers sell multiple brands of product. And there may be two brands of gin that the consumers would consider to be interchangeable, brand A and brand B. Now maybe somebody else sells brand B. You can envision where the wholesaler who sells both says, well, I want people to drink brand A because I'm the only one who sells it. In that case, I might actually raise the price on brand B, lower the price on brand A, to convince the market to shift over to brand A, because they think it's interchangeable, and take market share away from my competitor who only sells brand B. That's permitted by the statute. I think it would be understandable behavior. The other thing I would comment on, counsel says that wine is the same price in every retail store in Connecticut. That is not a facial challenge either. It doesn't have to be. Just simple economics would tell you, if you lived out in the country and it were a 20 mile drive to the next liquor store, you would not sell at the minimum. Am I allowed to take that argument into account in terms of a facial challenge? Or, and if I am, am I not also allowed to take into account on a facial challenge, whether, in fact, this becomes a horizontal agreement on a price? I'm trying to work with the notion, which is right, that it's a facial challenge. But I'm trying to remind myself, after doing this for many years, what I'm allowed to take into account when I'm looking at something that's facial. You have been talking about economics and what you can expect, and that's a facial, in terms of deciding a facial challenge, right? Your Honor, I think to analyze a statute, you can do that. But to accept as fact that the price is the same at every retail store in Connecticut is not a facial challenge. That would be, that's factual as applied challenge. This is a deeply anti-competitive set of statutes, you would agree? Whether or not that bears on its being per se problematic, there are very anti-competitive aspects of the arrangement here. There are some aspects that are anti-competitive, but as we know from the days of Parker versus Brown, the state can do anti-competitive things. The states have a lot of conflicting issues to balance. Protecting people against over-consumption of alcohol is one of them. Protecting small retailers, that's within the purview of the General Assembly, they can do that. Assuming that the wholesalers got together and agreed solely on the content of the buy and hold provision. That post and hold, that is to say, we'll all post our provisions and hold them, post our prices and hold them for a month subject to the short term opportunity to match downward. If the wholesalers got together and reached that agreement without any more specific agreement as to the content of pricing, would you agree that that is a per se violation of the Sherman Act? Not necessarily, your honor. I think we take this from the Sugar Institute case. Recall Sugar Institute, sugar is fungible, it's just sugar. There are no different brands of sugar. There's no inter-brand, intra-brand distinction. And that was a private agreement, privately reached, where they agreed that they would change the prices. And they would change the prices only if everybody else agreed that one would raise the price. The others would either match it or not. If they didn't match it, the price didn't go up. Here, there's no private agreement to do that. It's a state command that you'll post your price, whatever your own price is. And to answer your question directly, if they agree that they would merely post their prices and keep them that way, but those prices were not the same, I don't see any reason why that should be accorded per se treatment. Well, does, is it required that the prices be the same? Or that there be an agreement as to price among the competitors? With all due respect to the- I thought the latter. With all due respect to the Supreme Court in 324 Licker, while there might have been sufficient private regulatory power in New York's minimum resale price law to justify holding that, an agreement was not necessary there. I don't know that it should have more general application than an agreement is unnecessary everywhere. With respect to post and hold, this court in Todd versus Exxon looked at something that was similar. It was that the employers would share data about what they paid their employees, so they wouldn't bid against each other. And the understanding was, they will share the data and they will match those prices. And yet the court here, in an opinion written by now Justice Sotomayor, said that it needs to be looked at under a rule of reason standard, not a per se standard. Thank you, Counsel. Thank you, Your Honor. We'll hear from the wholesalers. Wine and spirits. Thank you, Your Honor, and actually I'm also speaking on behalf of all of the intervener defendants besides Breskin Barton. So that would include the beer wholesalers as well as the package store association, which is the off-premise retailers, as well as the restaurants association, which would be an on-premise retailer. Your Honor, I am going to try to address specifics about what's already been spoken about rather than have a presentation and try to specifically perhaps clear up some confusion which I think may be here. One thing that I think is very important to note, and this happened, Judge Hall was very clear on making Mr. Murphy stay in her boxes, as she called it. Any time that Mr. Murphy talks about a response to what is wrong with post and hold, you hear him slide off into saying it's bad because it's not just post and hold. It's the minimum bottle provision. But you can only do that. You can only undertake that analysis and use, if you will, a Chinese menu approach. In other words, post and hold has this but doesn't have that. Minimum bottle has this but doesn't have that. If you accept Mr. Murphy's construct, which is the bundling, or as we've called it, lumping, in order to analyze these statutes. And that is not appropriate for the very reasons that Judge Hall set out in the beginning part of her opinion. I'm not going to get into those unless you have questions, but there's federalism. There's a severability statute. There's on and on and on. So- Doesn't that get to remedy, though? In other words, in understanding the effect of a provision, why don't you consider it in the context of its surrounding provisions, even if federalism might dictate the most narrow remedy at the back end if there is a problem? You can certainly consider how the statutes work. I totally agree with you there. And that's another issue, because people seem to get off the rails when they're discussing how these statutes work. That's entirely appropriate because this is a scheme, and I do not mean that in a pejorative sense. But it's like any other scheme. I mean, the Securities Act, for example. But when you are doing a preemption analysis in order to determine whether the Norman Williams test, or even if you want to use, flip it and do it the way Judge Hall did it, whether they have put them through their paces on each of those statutes. Then you have to look at that statute on its face, not when combined in effect with another statute. And that's particularly apparent here because Mr. Murphy continues to use minimum bottle for the retail aspects in order to bolster the post and hold which is only at the wholesale level in actuality. He answered your question, Judge Engelmeyer. Well, is it just at the wholesale aspect? And he said, well, it's at both levels because of the minimum pricing. Statute. He forever is tying the two together. So unless you buy into bundling and the only case that he can cite that has done that is his own case in Maryland. Then you cannot go down that path. And he cannot cite, I'm sorry, Your Honor. Let's assume that, I mean, I think I fully understand the argument and indeed the district court made it very well, I thought. The question is, okay, we're just in post and hold. What then? Because it's post and hold that the same district court said. Nothing she can do about it because she's bound by our decisions. But it should be preempted by a great former judge of this court, which is just plain wrong. Yes, Your Honor. There are two problems with Judge Hall's analysis. One is that she assumed that the underlying statutes in 324 Licker were substantially the same as post and hold here, which is incorrect. And I'm happy to get into that. But the other thing, perhaps more importantly for your purposes and since you wanted to focus on Vatopaglia. She was also incorrect in assuming that Judge Friendly had nothing to say or no relevance to the notion of unilateral versus hybrid. And so once she made that determination on virtually a timeline basis. In other words, Fisher came after Vatopaglia, therefore, she got herself off onto an avenue that we believe was incorrect. And if you look at the Vatopaglia decision, literally in terms of the language that Judge Friendly uses. And you compare it to the language in Fisher and then some of the subsequent cases that talk hybrid versus unilateral. He was essentially foreshadowing this. And also keep in mind that with all due respect to Justice Powell, he did not have some apocalyptic moment and come up with this hybrid concept. Yes, he put that front and center. But the concept of hybrid had been mentioned in Norman Williams, for example. And in other intervening cases between Norman Williams and Fisher. So Judge Hall was wrong, I think, when she viewed Friendly as being unable to provide us with any instruction or guidance. May I continue, Your Honor? Thank you. On the issue of unilateral versus hybrid. So if you take Judge Friendly's opinion, you look at the language, you compare it with Fisher, then we believe that if you could turn back the clock, Judge Friendly could have determined that post and hold was unilateral. But he didn't have to, Your Honor. You know why? Because he viewed the statutory analysis the way that we suggested Judge Hall might want to do. In that way, she wouldn't have had to get to the whole issue of hybrid versus unilateral. But post and hold, if you look at just the post and hold provision, and let's say we conclude that it's hybrid and so we move to per se. Why is Judge Friendly, whose decision scarcely mentions the hold provision, unlike the winter dissent, more persuasive than, let's say, the Ninth Circuit's treatment of what appears to be an analogous post and hold provision? In fact, Judge Friendly does talk about the hold aspect. And he then cites cases, the Connecticut cases, including Serlin, which talk about the hold aspect. So again, I believe Judge Hall was incorrect in her assessment and her decision where she said, it's interesting that the only cases that Judge Friendly references are with respect to posting. That's just not correct, Judge Engelmeyer. But separate and apart from that, let's look at Judge Winter's dissent. Judge Winter relies front and center on two cases, Sugar Institute and Catalano. Neither of those cases was a preemption case. Both of those cases involved definite agreements. As you know, Sugar Institute, there was a trade association that was specifically formed for the purpose of exchanging a price. And if you wanted to be a member of the club, you had to agree to that price. So that is not in any way going on here. First of all, again, we're in preemption. We're not in a Sherman One claim. If that's what Mr. Murphy wanted to bring, then he should reformulate his complaint. Finish the other aspect of my question. The Ninth Circuit, Judge O'Scanlan has a detailed discussion that is analyzing what appears to be an analogous post and hold provision and finds it preempted. And exactly right. Why is that wrong? He goes down the same path that Judge Winter was the line leader for. In other words, they all are talking about Sugar Institute. And that is the very threshold start of their analysis. All of them. Judge Winter, Miller, the Canterbury, every single one. If you look at it, it's almost as if they run the same playbook. And likewise... It's a violation. I'm sorry. No, I mean, what you're saying, and it's easy enough to follow actually, although it's a very complicated case in my view, difficult, is that, yes, Judge Fernley was right and the other people are wrong. That's right. I mean, again, no disrespect to Judge Winter, but, you know, and for example, Mr. Murphy also points to not only subsequent cases, none of which, by the way, are controlling, but also, you know, the great Aretha and Hovenkamp. But look at Aretha and Hovenkamp. They're also talking about Sugar Institute. And they're saying Judge Winter's dissent is more in line with MidCal. Absolutely right. I mean, that's no late-breaking news. Because, but Judge Fernley also discusses MidCal. And by the way, Judge Owen, on the district court level, likewise discussed MidCal and specifically said, these are two different statutes. One is post and hold, and one is resale price maintenance. So, again, if you stay true to Judge Fernley's analysis, and that is not being disrespectful to Judge Winters, but Judge Fernley does cover all the bases he needs to cover. And he does not forget about the hold. And he doesn't, he is also almost prescient in terms of the hybrid versus unilateral, which will become more prevalent in subsequent cases. If I might continue, Judge Fuller? Yes. Thank you. We also need to keep in mind that, and again, it's a little bit of slippage here, the only amendment down that is possible under the post and hold is with respect to the same identical product. Period. Full stop. So while that has an effect on, for example, your standard size bottle of Chardonnay, Kendall Jackson Chardonnay of a particular year, it has no effect at all on any other Kendall Jackson product, on any other wine, white, red, rosé, or any other color. So again, we've got a little bit of slippage here when Mr. Murphy tries to paint a very dark picture, but this is, there are two mandates under this scheme. One, you cannot price below cost, and by the way, that's at all three tiers. Suppliers can't do it, wholesalers can't do it, and retailers can't do it, which is one of the ways that this statute is different from those in 324. The other thing is you can't discriminate in pricing. That's also suppliers can't discriminate to wholesalers, wholesalers can't discriminate against retailers. Again, a distinction with 324. So when you put those two bookends together, right, and those are the mandates here, and it's straight up on the face of this statutory scheme, then it makes sense as to why the system works the way it does and why the wholesalers are bound, if they want to follow the statute, right, they don't have a whole lot of wiggle room, right? Yes, they can change their case price, but Mr. Murphy is wrong. If they have a sale or a post-off, which is what the jargon is in the industry, the post-off price of your case does not change the case price for purposes of the algorithmic statutory formula to determine the bottle price. Now, that may be confusing, but it's not collusion. So it can be difficult to understand these concepts, but you have to go back and you have to look at what the statute mandates, you have to look at what the definition of bottle price is, and then you have to remember that you're in a world where you have to have uniform pricing and you cannot price below cost. So if that's a scheme, okay, but those two factors, no below-cost pricing and no discrimination among your purchasers, those two purposes, goals, mandates are totally not anti-competitive. They may result in certain competitors' business models not working the way they want to, because in this case, Total Wine can't get quantity discounts and they can't squeeze a wholesaler for a bottle price. Absolutely correct, but that does not make the system anti-competitive for Sherman Act purposes, and it surely doesn't for purposes of a preemption analysis. Good place to stop. Thank you. Thank you, Your Honor. I'm sorry, I get passionate about alcohol. Thank you. Mr. Murphy, you have 2 minutes for rebuttal. Thank you, Your Honor. The reason that we challenge both aspects of this restraint in one statutory claim is because the statute says in Section 3063C, which is in the reply brief as an appendix, for alcoholic liquor other than beer, each wholesaler shall post with the department monthly the bottle, can, and case price. There's no way to separate those out. Both the bottle price, which goes to the minimum bottle price that the retailer must charge, and the case price, what I'm going to charge you for a case of Kendall Jackson, are both in the same statute. They both must be posted monthly. They both must be held monthly. The statutes are intertwined. The definition of what the bottle price is is in a different statute, but the requirement of post and hold covers both. There is confusion about the statute, and I think if you look at it, myself, I'm a fan of Jameson's Irish whiskey. If you look at my footnote in the reply brief, Jameson's is offered for sale most of the year at the eight cents more than a bottle price, but three times a year they reduce it. All the wholesalers reduce it to the same level. They do not apply a statutory algorithm. They don't change the bottle price commensurate with the change in the case price. They sometimes don't change it at all. Sometimes they change it a little bit. There's no restriction on what the wholesalers can do. They have to charge, they have to create a price that's at least eight cents a bottle more, but they could make it $1.08, $2.08, and in the case of the Jameson's, $10 more than what they're selling it to the retailer for. So my client buys that Jameson's at $35 a bottle. He still has to sell it at $49.99 a bottle, just like every other retailer in the state of Connecticut. The fact that there's similarity across the board is also what we see in Twombly and all the conscious parallelism cases. I thought the evil of Section 1 was the agreement, not the common pricing, or not, in fact, a harm to competition. The hardest problem for you, in my view, in this case, is why even the detailed regulatory scheme here is tantamount to an agreement equivalent such that we would treat it as preempted. Can you answer that? I think that when you read Rice v. Williams, the statute to be preempted must either mandate or authorize the anti-competitive conduct. Now, here, the statute mandates the posting every month and holding those prices every month, and it authorizes exactly what we're talking about, where wholesalers are able to match each other's prices month after month after month down to the penny. It's authorized by the statute. And that's why I say there's... Why is that not authorized in real life without the statute, too? In other words, if the prices were not posted and not held and I was a wholesaler and learned what my competitors were selling, probably reasonably learnable enough, why couldn't I Twombly-like go and match them? You could, and I guess... But if it became so pervasive as it is in Connecticut, month after month, year after year, that the system's been in effect, at some point that conscious parallelism is going to give rise to an agreement, the plus factors that lead to an allegation and proof that there was a conspiracy that was going on. Here, there's no need for that because the statute obviates the need for the agreement, and that's really what footnote 8 of 324 Licker says. When you have a preemption claim, a facial challenge to the statute, there is no need to search for a contract combination or conspiracy in restraint of trade. That restraint of trade is created by the statute, which enforces the private pricing decisions made by, in this case, the wholesalers, and the statute just gives them kind of the patina of regulatory authority that allows them to do what they've done and to create a system in which there is no retail price competition. A simplistic question. Yes, sir. I am absolutely confident that if I walk down Madison Avenue long enough, I will find different prices for Kendall Jackson, right, in New York, and, for that matter, probably James. Probably so. Why is that so here and not in Connecticut? Well, there's no minimum bottle pricing requirement here in New York, for one thing, so that you don't have a wholesaler dictating to all of the retailers, you can't charge any less than this for Jameson's. And then if you're in a competitive marketplace and the statement is, I can't charge any less than this, but I want to charge as little as I can to bring customers to my store, I'm going to charge that minimum bottle price. That's what's happening in Connecticut. Thank you. Thank you, Your Honor. Thank you all for a very lively argument. We'll reserve decision.